UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| ESTATE OF JULIANNE CROOKSTON,<br><br>　　　Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTIONS TO COMPEL (DOC. NOS. 73, 74)**<br>**AND**<br>**DENYING SHORT FORM DISCOVERY MOTION (DOC. NO. 71)** |
| UNITED STATES OF AMERICA,<br><br>　　　Counterclaim Plaintiff,<br><br>v.<br><br>ESTATE OF JULIANNE CROOKSTON,<br><br>　　　Counterclaim Defendant,<br><br>and<br><br>CACHE VALLEY BANK; SIDNEY CROOKSTON; and SID CROOKSTON, LLC,<br><br>　　　Additional Counterclaim Defendants. | Case No. 1:21-cv-00102<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Daphne A. Oberg |

　　This case involves a dispute over the property owned by the Estate of Julianne Crookston. Ms. Crookston acquired the property from Sid Crookston, who she later married.[1] Mr. Crookston owned a company, Sid Crookston Construction ("SCC"), which managed to

---

[1] (*See* United States' Am. Answer and Countercls. ("Am. Answer") 12, Doc. No. 30.)

1

accrue a nearly two-million-dollar federal tax debt before becoming insolvent.[2] The United States filed a lien on Ms. Crookston's property, asserting that SCC's unpaid tax debt should be assessed against Ms. Crookston, SCC's corporate nominee.[3] Ms. Crookston filed a quiet title action under 28 U.S.C. § 2410(a)(1), arguing SCC's tax debt cannot be assessed against her because she is not and was never SCC's nominee.[4] The United States counterclaimed under 26 U.S.C. § 7403, seeking foreclosure and sale of the property, asserting the Estate of Ms. Crookston holds title to the property as SCC's nominee, and arguing the transfer of the property to Ms. Crookston was fraudulent.[5]

The parties filed a motion for a discovery dispute conference, and the United States filed two motions to compel.[6] The court held a hearing on the motions on November 28, 2023, taking them under advisement.[7] The parties' motion for a discovery dispute conference can more accurately be considered a motion by the United States to compel production of communications between Mr. and Ms. Crookston related to the property's purchase, construction, and expense

---

[2] (*See id.* at 10, 16.) Sid Crookston Construction is also referred to as Sid Crookston Construction, LLC and Sid Crookston, LLC throughout the parties' briefing. For clarity, this order refers to the company as SCC.

[3] (Compl., Doc. No. 2 at 3.)

[4] (*Id.*) Because Ms. Crookston passed away after filing this action, the plaintiff party is now the Estate of Julianne Crookston.

[5] (Am. Answer 14–18, Doc. No. 30.)

[6] (*See* Stipulated Mot. for Disc. Dispute Conf. Between the United States and the Estate of Julianne Crookston ("Mot. for Disc. Conf."), Doc. No. 71; Mot. to Compel Disc. Resps. from Sidney Crookston ("Mot. to Compel Mr. Crookston"), Doc. No. 73; Mot. to Compel Disc. Resps. from Sid Crookston Constr. ("Mot. to Compel SCC"), Doc. No. 74.)

[7] (*See* Min. Entry, Doc. No. 83.)

payments.[8] The court, therefore, construes the motion as a motion to compel. This motion is denied where the United States failed to show the Estate waived privilege or that any exception to the marital communications privilege applies. In its next motion, the United States seeks to compel production of communications from Mr. Crookston's cell phone regarding the property's purchase, construction, and expense payments.[9] Mr. Crookston objected on the grounds that the United States already has the documents in its possession.[10] But where the documents were produced in a different case pursuant to a more limited request, it is not apparent the requests for production at issue have been satisfied. Accordingly, this motion is granted. Finally, the United States seeks to compel SCC to supplement its interrogatory responses related to payments SCC made to various individuals and entities in connection with the property at issue in this case.[11] Where SCC's interrogatory answers are insufficient, this motion is granted. Each motion and ruling is addressed in more detail below.

I. United States' Motion to Compel Production of Communications Between Mr. and Ms. Crookston (Filed as a Motion for Discovery Dispute Conference)

On November 10, 2022, the United States served Requests for Production ("RFPs") 1, 2, and 3 on the Estate, seeking communications between Mr. and Ms. Crookston related to the property's purchase, construction, and expense payments.[12] According to the United States, the

---

[8] (Suppl. Br. for Disc. Dispute Conf. Between the United States and the Estate of Julianne Crookston ("United States' Suppl. Br.") 3, Doc. No. 78.)

[9] (*See* Mot. to Compel Mr. Crookston, Doc. No. 73; Ex. 1 to Mot. to Compel Mr. Crookston, United States' First Set of Reqs. for Produc. to Sidney Lucas Crookston, Doc. No. 73-1 at 19–20.)

[10] (Resp. to Mot. to Compel, Doc. No. 80 at 1.)

[11] (Mot. to Compel SCC 2, Doc. No. 74.)

[12] (United States' Suppl. Br. 3, Doc. No. 78.)

Estate asserted the marital communications privilege and produced only one document on the grounds that producing more non-privileged documents would be unduly burdensome.[13] After the United States filed a motion to compel responses,[14] the Estate agreed to produce responsive text messages from Ms. Crookston's phone by April 12, 2023, a week before the deposition of the Estate's representative.[15] On April 12, 2023, the Estate produced some responsive text messages, but withheld all text messages between Mr. and Ms. Crookston.[16] During the deposition of the Estate's representative, the Estate produced a privilege log, invoking marital privilege as to the withheld texts.[17] After the parties met and conferred in May 2023, they agreed that group messages between Mr. and Ms. Crookston and third parties should not be withheld, because the presence of a third party invalidates marital privilege.[18] These group messages were later produced.[19] In August 2023, the Estate produced an updated privilege log again asserting marital privilege and withholding "[c]ell text communications solely between

---

[13] (*Id.*)

[14] (*See* United States' Mot. to Compel Disc. Resps., Doc. No. 51.) This motion was denied without prejudice due to the need for the parties to meet and confer. (*See* Docket Text Order, Doc. No. 56.)

[15] (United States' Suppl. Br. 3, Doc. No. 78.)

[16] (*Id.* at 3–4.)

[17] (*Id.* at 4.)

[18] (*Id.*)

[19] (*Id.* at 5.)

[Mr.] Crookston and [Ms.] Crookston."[20] The updated privilege log consists only of this description and the date range of the communications.[21]

The parties, disputing whether the privilege log was sufficient, filed a stipulated motion for a discovery conference.[22] The court ordered supplemental briefing on the motion.[23] The United States argues federal common law governs the privilege dispute because both the claim and counterclaim are brought under federal law.[24] The United States also contends the Estate waived any privilege claims by failing to provide a timely privilege log that satisfies Rule 26(b)(5)(A)(ii) of the Federal Rules of Civil Procedure.[25] Specifically, the United States asserts the privilege log does not provide enough information to allow the United States to determine whether the communications are subject to the business communications or fraud exceptions to privilege rules.[26] In the alternative, the United States asks the court to review the withheld communications in camera to determine whether they are privileged.[27] The Estate argues Utah law governs the privilege dispute, and that the privilege log is timely and complies with Rule

---

[20] (*Id.* at 4; *see also* Ex. A. to Mot. for Disc. Conf., Estate of Julianne Crookston's Privilege Log, Doc. No. 71-1.)

[21] (*See* Ex. A. to Mot. for Disc. Conf., Estate of Julianne Crookston's Privilege Log, Doc. No. 71-1 at 3.)

[22] (*See* Mot. for Disc. Conf., Doc. No. 71.)

[23] (*See* Docket Text Order for Suppl. Briefing, Doc. No. 76.)

[24] (United States' Suppl. Br. 6, Doc. No. 78.)

[25] (*Id.* at 6–7.)

[26] (*Id.* at 8–12.)

[27] (*Id.* at 12–13.)

5

26.[28] The Estate further contends neither Utah nor federal law recognizes a business communications exception to privilege.[29] Even if such an exception were recognized, the Estate argues it would not apply here (nor would the fraud exception), since the United States has not supported its assertions; they are merely speculative.[30] Lastly, the Estate contends there is no basis for in camera review of the communications.[31]

      A. *Applicable Law*

Under Rule 501 of the Federal Rules of Evidence, federal common law governs claims of privilege in federal court, "[b]ut in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."[32] In federal-question cases, where a federal court has supplemental jurisdiction over a state law claim, federal privilege law controls when the allegedly privileged evidence is relevant to both the federal and state law claims.[33] Rule 26 of the Federal Rules of Civil Procedure requires a party asserting privilege to "(i) expressly make the [privilege] claim; and (ii) describe the nature of the . . . communications . . . not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the [privilege] claim."[34]

---

[28] (The Estate's Suppl. Br. Concerning the Privileged Marital Comms. ("Estate's Suppl. Br."), Doc. No. 81 at 3–7.)

[29] (*Id.* at 5–7.)

[30] (*Id.* at 7.)

[31] (*Id.* at 7–8.)

[32] Fed. R. Evid. 501.

[33] *See Tanner v. McMurray*, 405 F. Supp. 3d 1115, 1188 (D.N.M. 2019).

[34] Fed. R. Civ. P. 26(b)(5)(A)(i)–(ii).

6

Private communications made between spouses during a valid marriage are presumptively confidential.[35] However, under the crime-fraud exception, communications between spouses "about crimes in which they conspire or participate or, after the fact, participate in, are not privileged marital communications."[36] Additionally, a few federal courts have recognized a federal common law exception to marital privilege for business communications, on the theory that such communications are not intended to be confidential.[37]

B. *Analysis*

As explained above, federal law governs privilege claims where federal law provides the rule of decision. In this case, federal law provides the rule of decision. Ms. Crookston brought this suit under 26 U.S.C. § 2410(a)(1), the United States counterclaimed under 26 U.S.C. § 7403, and the case "is governed by the [federal] tax lien statute, 26 U.S.C. § 6321."[38] The United States also filed a state law claim under the Utah Fraudulent Transfer Act, but where (as here) a federal court exercises supplemental jurisdiction over a state law claim,[39] federal

---

[35] *See Blau v. United States*, 340 U.S. 332, 333 (1951); *United States v. Knox*, 124 F.3d 1360, 1365 (10th Cir. 1997).

[36] *United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984).

[37] *See Veracities PBC v. Strand*, 602 F. Supp. 3d 1354, 1357–59 (D. Or. 2022); *Consumer Fin. Prot. Bureau v. MacKinnon*, No. 16-cv-880G(sr), 2021 U.S. Dist. LEXIS 187229, at *14 (W.D.N.Y. Sept. 29, 2021) (unpublished); *Brophy v. Hartley Doering Grp., Inc.*, No. 1:18-cv-021269, 2020 U.S. Dist. LEXIS 103853, at *19 (M.D. Pa. June 15, 2020) (unpublished).

[38] (Estate's Suppl. Br., Doc. No. 81 at 5; *see also* Compl., Doc. No. 2 at 3; Am. Answer 9, Doc. No. 30.)

[39] (*See* Compl. ¶ 4, Doc. No. 2 ("This court has jurisdiction over this action pursuant to 28 U.S.C. § 1340."); Am. Answer 9, Doc. No. 30 ("This Court has jurisdiction to hear this action pursuant to 28 U.S.C. §§ 1340, 1345, and 26 U.S.C. §§ 7402(a) and 7403.").) As the quoted language indicates, this case is in federal court because it arises under a federal internal revenue statute and includes a claim brought by the United States. Thus, the court exercises supplemental jurisdiction over the state law claim.

privilege law still controls when the evidence is (as here) relevant to both the federal and state claims. And although resolution of the federal claims involves application of state law to determine property interests,[40] the case is ultimately governed by the federal statutes under which the parties bring their claims. Accordingly, federal privilege law governs.

As stated above, a few federal courts have recognized a federal common law exception to marital privilege for business communications, seemingly adopting state law conceptions of the exception.[41] But even if this court were to recognize such an exception, the United States has not shown it applies. In its brief, the United States alleges Ms. Crookston was "involved" with SCC and SCC's alleged successor company, but presents no evidence supporting this contention.[42] The United States also cites another ongoing case involving the Crookstons to support its allegation that "the Crookston clan has intertwined business and family matters in its efforts to defraud its creditors."[43] But the United States cannot rely purely on its own allegations—in this or other cases—to show the exception applies. The same reasoning applies to the United States' assertion that the crime-fraud exception applies, which the United States only supports with its own allegations.[44] Absent a showing of an established, joint, business

---

[40] *See Aquilino v. United States*, 363 U.S. 509, 512–13 (1960) ("[I]n the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property.").

[41] *See Veracities PBC*, 602 F. Supp. 3d at 1357–59; *Consumer Fin. Prot. Bureau*, 2021 U.S. Dist. LEXIS 187229, at *14; *Brophy*, 2020 U.S. Dist. LEXIS 103853, at *19.

[42] (United States' Suppl. Br. 10–11, Doc. No. 78.)

[43] (*Id.* at 11 (citing *ACI Construction, LLC v. United States*, No. 1:19-cv-00054, 2022 U.S. Dist. LEXIS 158592 (D. Utah Aug. 31, 2022) (unpublished)).)

[44] (*Id.*) Where the parties filed supplemental briefs, with exhibits, the United States certainly had the opportunity to present such evidence.

relationship[45] or criminal enterprise[46] between Mr. and Ms. Crookston, there is no basis to overcome the presumption that marital communications are privileged. The United States cannot force the Estate to disclose or describe the content of privileged marital communications merely by alleging a business relationship or fraudulent conduct. Because there is no evidence suggesting an exception to the privilege applies, the log satisfies Rule 26(b)(5)(A) by describing the communications in a manner that allows the United States to assess the privilege claim.[47]

Moreover, the United States' contention that the Estate has waived any privilege claims is incorrect. The United States alleges the Estate waived its privilege claims in April 2023 because it did not produce a privilege log until the middle of a deposition.[48] But the Estate has consistently claimed marital privilege, from the time of the first request. And after the United States objected to the Estate's initial privilege log, the Estate agreed to produce group text

---

[45] *See, e.g.*, *Veracities PBC*, 602 F. Supp. 3d at 1355 (applying exception when husband and wife and "their company" were being sued); *Consumer Fin. Prot. Bureau*, 2021 U.S. Dist. LEXIS 187229, at *2 (applying exception when wife was husband's "business associate[]"); *Brophy*, 2020 U.S. Dist. LEXIS 103853, at *5 (applying exception when plaintiff's wife was a "co-owner of the [defendant corporation]").

[46] *See, e.g.*, *United States v. Henderson*, No. 00-40109-01-JAR, 2006 US. Dist. LEXIS 55497, at *29 (D. Kan. Aug. 7, 2007) (unpublished) (applying exception when both husband and wife were charged in a drug conspiracy); *United States v. Verdin-Garcia*, No. 05-20017-01-JWL, 2005 U.S. Dist. LEXIS 61504, at *11–12 (D. Kan. Nov. 23, 2005) (unpublished) (noting exception would apply when wife accepted and counted drug money at husband's direction).

[47] Unlike the attorney-client privilege, which depends on the content of the communications, the marital communications privilege only requires that communications be (1) private, (2) between spouses, and (3) during a valid marriage. *See United States v. Honors*, No. 23-CR-10030-EFM, 2023 U.S. Dist. LEXIS 90220, at *4 (D. Kan. May 23, 2023) (unpublished) (citing *Knox*, 124 F.3d at 1365). The Estate's privilege log states the communications were made solely between Mr. and Ms. Crookston, provides a date range, and invokes marital privilege. (*See* Ex. A to Mot. for Disc. Conf., Estate of Julianne Crookston's Privilege Log, Doc. No. 71-1 at 3.) No further description of the content of the marital communications is required.

[48] (United States' Suppl. Br. 7–8, Doc. No. 78.)

messages, and provided an updated log.  Finally, as stated above, the privilege log satisfies Rule 26.  Under these circumstances, it would be inappropriate to find the Estate waived privilege; the Estate has not waived its privilege claims.  Lastly, because the privilege log satisfies Rule 26, in camera review of the communications is not appropriate.

    C. *Conclusion*

The Estate's privilege log complies with Rule 26, and the United States has failed to show any exception to the marital communications privilege applies.  Accordingly, the United States' requests that the court (1) find the Estate waived privilege, (2) order the Estate to provide another privilege log, or (3) review the communications in camera—are denied.  The motion to compel (originally filed as a motion for a discovery dispute conference) is denied.[49]

  II.   <u>Motion to Compel Discovery Responses from Mr. Crookston</u>

The next dispute relates to RFPs 1, 2, and 3, which the United States served on Mr. Crookston on November 10, 2022.[50]  The RFPs pertain to communications on Mr. Crookston's cell phone regarding the property's purchase, construction, and expense payments.[51]  The United States argues Mr. Crookston has yet to produce responsive documents,[52] while Mr. Crookston argues the United States has had the requested documents for three years.[53]  At the hearing, Mr. Crookston's counsel clarified that Mr. Crookston produced documents responsive to the requests

---

[49] (Doc. No. 71.)

[50] (*See* Mot. to Compel Mr. Crookston 2, Doc. No. 73.)

[51] (*See* Ex. 1 to Mot. to Compel Mr. Crookston, United States' First Set of Reqs. for Produc. to Sidney Lucas Crookston, Doc. No. 73-1 at 19–20.)

[52] (*See* Mot. to Compel Mr. Crookston 3, Doc. No. 73.)

[53] (*See* Resp. to Mot. to Compel Mr. Crookston, Doc. No. 80 at 1.)

in a different case.  However, the documents were produced in response to a different RFP.  For example, the RFP from the other case was limited to text messages, whereas the RFPs in this case request "communications in whatever form."[54]  The date ranges for the RFPs in this case also differ from the other case.  Because the RFPs are not identical, it cannot fairly be said the United States already has possession of all responsive documents.  Moreover, production in a different case does not absolve Mr. Crookston of his responsibility to produce responsive documents in this case.  Accordingly, the United States' motion to compel[55] is granted.  Mr. Crookston is ordered to produce documents responsive to RFPs 1, 2, and 3 within fourteen days of this order.  To the extent the responsive documents in this case overlap with the responsive documents in the previous case, Mr. Crookston must produce them again.  Mr. Crookston's request for attorney fees[56] is denied because the motion is granted.[57]

    III.    <u>Motion to Compel Discovery Responses from Sid Crookston Construction</u>

Finally, the United States moves to compel SCC to supplement its responses to Interrogatories 1, 2, 6, 7, and 8, which the United States served on November 10, 2022.[58]  The interrogatories relate to the identification of payments SCC made to various individuals and entities in connection with the property at issue in this case.[59]  SCC's responses refer to records

---

[54] (*See* Ex. 1 to Mot. to Compel Mr. Crookston, United States' First Set of Reqs. for Produc. to Sidney Lucas Crookston, Doc. No. 73-1 at 19.)

[55] (Doc. No. 73.)

[56] (*See* Resp. to Mot. to Compel Mr. Crookston, Doc. No. 80 at 3.)

[57] *See* Fed. R. Civ. P. 37(a)(5)(A) (providing for an award of attorney fees to the prevailing party).

[58] (Mot. to Compel SCC 2, Doc. No. 74.)

[59] (*Id.*)

produced by Ms. Crookston and Cache Valley Bank, indicating the requested information may be found there.[60] With these responses, SCC appears to rely on Rule 33(d) of the Federal Rules of Civil Procedure, which allows a party to answer an interrogatory by identifying which records the interrogating party should review, if the burden of ascertaining the answer will be substantially the same for either party and the answer can be determined by examining a party's records.[61] The answering party must identify the records "in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could."[62]

The United States argues SCC's responses violate Rule 33 because the rule only permits a party to summarize its own business records—not another party's records.[63] SCC argues that because it disclaims any interest in the property, it is only a "nominal" party and should not be subject to time-consuming and expensive discovery.[64] SCC also contends it has informed the United States it lacks any responsive documents, because SCC closed long ago and did not maintain records.[65] SCC states the documents it references in its answers are, as far as it knows, the only responsive documents that exist.[66] At the hearing, counsel for SCC clarified that while

---

[60] (*See* Ex. 2 to Mot. to Compel SCC, Sid Crookston LLC's Answers to United States' First Set of Interrogs. 2, 4–5, Doc No. 74-2; Ex. 2 to Resp. to Mot. to Compel, Sidney Crookston's Suppl. Answers to United States' First Set of Interrogs., Doc. No. 79-2 at 3–4.)

[61] (*See* Ex. 2 to Mot. to Compel SCC, Sid Crookston LLC's Answers to United States' First Set of Interrogs. 2, 4–5, Doc No. 74-2; Ex. 2 to Resp. to Mot. to Compel, Sidney Crookston's Suppl. Answers to United States' First Set of Interrogs., Doc. No. 79-22 at 3–4); Fed. R. Civ. P. 33(d).

[62] Fed. R. Civ. P. 33(d).

[63] (Mot. to Compel SCC 2, Doc. No. 74.)

[64] (Resp. to Mot. to Compel SCC, Doc. No. 79 at 1–3.)

[65] (*Id.* at 2.)

[66] (*Id.* at 3.)

he is "not aware of any company records" which would permit SCC to answer the interrogatories, he would "not represent to the court that there could not be some file somewhere."

SCC's suggestion that it should be excused from discovery obligations, as a "nominal" party, is misguided. While SCC has a pending motion to dismiss, it is not relieved of its duty to respond to discovery requests unless the court dismisses SCC as a party. As a current party to this case, SCC must respond to interrogatories consistent with the Federal Rules of Civil Procedure.

Rule 33(b) requires that "interrogatories must be answered."[67] SCC has not done this as required. First, it is not apparent, based on counsel's answers at the hearing, that SCC diligently searched for information to permit it to answer the interrogatories before making a blanket reference to records produced by others. If, after a diligent search, SCC finds itself unable to answer the interrogatories, it may indicate as much in its response. But that is not how SCC responded. Instead, SCC referred to broad swaths of records produced by others, apparently in reliance on Rule 33(d), without identifying the documents in sufficient detail.[68] The United States is entitled to a response, even if the response is that SCC is unable to provide that information. Accordingly, United States' motion to compel[69] is granted, and SCC is ordered to

---

[67] Fed. R. Civ. P. 33(b)(1).

[68] *See* Fed. R. Civ. P. 33(d)(1).

[69] (Doc. No. 74.)

supplement its answers to Interrogatories 1, 2, 6, 7, and 8 within fourteen days of this order. SCC's request for attorney fees[70] is denied because the motion is granted.[71]

IV.     Conclusion

For the reasons stated above, the parties' stipulated motion for a discovery conference[72] (which the court construes as a motion to compel) is DENIED, the United States' motions to compel[73] are GRANTED, and the court orders as follows:

1. Mr. Crookston is ordered to produce documents responsive to RFPs 1, 2, and 3 within fourteen days of this order.

2. SCC is ordered to supplement its answers to Interrogatories 1, 2, 6, 7, and 8 within fourteen days of this order.

DATED this 19th day of December, 2023.

BY THE COURT:

_____
Daphne A. Oberg
United States Magistrate Judge

---

[70] (*See* Resp. to Mot. to Compel SCC, Doc. No. 79 at 4.)

[71] *See* Fed. R. Civ. P. 37(a)(5)(A) (providing for an award of attorney fees to the prevailing party).

[72] (Doc. No. 71.)

[73] (Doc. Nos. 73, 74.)