## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ESTATE OF JULIANNE CROOKSTON,<br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br>    Defendant.<br><br><br>UNITED STATES OF AMERICA,<br>    Counterclaim/Third-Party Claim<br>Plaintiff,<br><br>    v.<br><br>ESTATE OF JULIANNE CROOKSTON,<br>SIDNEY CROOKSTON, and SID<br>CROOKSTON, LLC,<br>    Counterclaim/Third-Party Claim<br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 1:21-cv-00102-JNP-DAO<br><br>District Judge Jill N. Parrish |

The United States of America filed notices of tax liens against real property owned by Julianne Crookston, asserting a right to recover against the property for unpaid taxes owed by Sid Crookston, LLC (Sid Crookston Construction). Julianne Crookston sued the United States to quiet title to her property. Soon thereafter, Julianne Crookston passed away and the court substituted her estate (the Estate) as the plaintiff in this action. The United States filed counterclaims against the Estate, asserting a right to foreclose on the tax liens on the property.

Before the court is the United States' motion for summary judgment. ECF No. 87. It seeks summary adjudication in its favor on the Estate's quite title claim as well as its counterclaims against the Estate. The court GRANTS IN PART and DENIES IN PART the motion. The court

grants summary judgment on the United States' claim to a tax lien for mortgage payments and property tax payments made by Sid Crookston Construction totaling $155,321.11. The court denies summary judgment on the remainder of the government's claims.

## BACKGROUND

Sid Crookston was the sole owner of a limited liability construction company known as Sid Crookston Construction. In July 2007, Sid Crookston purchased a parcel of land located at 2870 Naomi Circle in Logan, Utah. He financed the transaction with a purchase-money loan from Cash Valley Bank in the amount of $132,000. In 2008, Sid Crookston Construction made payments totaling $5,773.21 toward the purchase-money loan. In that same year, Sid Crookston and Sid Crookston Construction began to feel the economic headwinds of the Great Recession.

In November 2008, Sid Crookston's fiancée, Julianne Jackson, obtained a $895,000 construction loan from Cash Valley Bank to fund the building of a home on the property owned by Sid Crookston. Two days later, Sid Crookston transferred the property to Julianne Jackson by way of a quitclaim deed. She used funds from the construction loan to pay off the purchase-money loan owed by Sid Crookston. Sid Crookston and Julianne Jackson married sometime in 2009, and Julianne changed her last name to Crookston.

Julianne Crookston hired Sid Crookston Construction to be the general contractor for the construction of a home on the Naomi Circle property. By 2009, construction had begun. With the help of family and friends, Sid Crookston worked on the house on nights and weekends. Sid Crookston Construction employees, including Sid Crookston's sons and Julianne Crookston's son,

also helped with construction.[1] Sid Crookston Construction compensated one of its employees for some of the concrete work that he performed. Otherwise, Sid Crookston Construction employees were not paid for their work on the house. The employees provided free labor because of their familial ties and to repay favors that Sid Crookston had done for them over the years. Sid Crookston Construction was also not compensated for the use of its equipment to construct the home. Invoices for construction materials and for work done by subcontractors were paid with draws from Julianne Crookston's construction loan.[2] By July 2011, construction on the home was

---

[1] The Estate objects to these facts on the grounds that the United States relied on Sid Crookston's deposition in a related case: *ACI Construction, LLC v. United States of America*. The Estate is mistaken. The depositions that the court relies upon in this ruling were all taken in this action.

[2] The United States supports this fact with documents from the construction loan file maintained by Cash Valley Bank and produced to the government by the bank during discovery. These documents consist of loan draw requests signed by Julianne Crookston, a representative of Sid Crookston Construction, and a bank officer, along with invoices from subcontractors submitted to Cash Valley Bank to support the draw requests. The Estate objects to the admissibility of these documents on the grounds that they have not been sufficiently authenticated and that they are inadmissible hearsay.

The court overrules the authentication objection. Although documents submitted to the court during summary judgment proceedings are subject to authentication objections, an authenticating affidavit is not strictly required. *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170–71 (10th Cir. 2009). Courts must consider whether there is "evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a); *accord Law Co.*, 577 F.3d at 1170–71. A document may be authenticated through evidence of the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances." FED. R. EVID. 901(b)(4). Evidence that the draw requests submitted to Cash Valley Bank were stored in the bank's construction loan file, together with the signatures of Julianne Crookston, Sid Crookston Construction, and a bank officer found on the documents, are sufficient to support a finding that the documents are what the United States claims them to be. Additionally, the presence of the subcontractor invoices in the loan file suggests that Julianne Crookston submitted them to Cash Valley Bank to support the draw requests. Moreover, the invoices bear the service marks and logos of the subcontractors and contain other sufficient intrinsic indicia of authenticity.

over 90% complete, with $712,280 of the construction loan funds dispersed. Construction on the home was completed in 2012.

Starting in March 2010, Sid Crookston Construction began to fall behind on its quarterly payroll taxes. Sid Crookston Construction also failed to pay its income taxes and federal unemployment taxes for the 2010 tax year. In 2012, Sid Crookston Construction's contractor's license was placed on a one-year probation due to the company's failure to pay its federal and state taxes. Sid Crookston Construction's unpaid tax bills, together with interest and penalties, continued to mount until the company stopped operating in 2016.

In December 2012, Julianne Crookston obtained a new loan from Cash Valley Bank in the amount of $845,000 to pay off the 2008 construction loan. In January 2014, Sid Crookston Construction began making payments towards the 2012 loan. Sid Crookston Construction paid a total of $134,066.67 towards the loan before it stopped operating in mid-2016. Sid Crookston Construction also made payments towards the property taxes for the Naomi Circle property from 2013 to 2016 totaling $21,254.44. Additionally, Sid Crookston Construction made payments towards the homeowner's insurance, gas, power, internet service, landscaping, extermination services, and plumbing services for the property.

In July 2016, ACI Construction, a company run by two of Sid Crookston's sons and Julianne Crookston's son, hired Julianne Crookston as a secretary. Her base salary—$4,615.38 biweekly—was higher than any other employee of ACI, including the managers of the company. Starting in 2016, ACI made payments towards the property taxes, homeowner's insurance, gas,

---

The court also overrules the Estate's hearsay objection. Because the construction loan draw requests were submitted and signed by Julianne Crookston, they are admissible as statements of a party opponent. FED. R. EVID. 801(d)(2).

power, internet service, water, sewer, and garbage services for the Naomi Circle property owned by Julianne Crookston.

In May 2018, the United States recorded a notice of federal tax lien on the Naomi Circle property for the unpaid tax bills owed by Sid Crookston Construction, alleging that Julianne Crookston was a nominee of the company. In July 2021, Julianne Crookston sued the United States to quiet title to the property. After she passed away in October 2021, the court substituted her Estate as the plaintiff in this action. The United States filed counterclaims against the Estate, asserting a right to foreclose on the tax liens on the property.

Now before the court is the United States' motion for summary judgment. It seeks summary adjudication in its favor on the Estate's quite title claim as well as its counterclaims against the Estate. In essence, the United States requests a judgment confirming the validity of its tax lien on the Naomi Circle property for the full amount of Sid Crookston Construction's unpaid tax bill and ordering a foreclosure sale of the property.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met this burden, the burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

When a taxpayer fails to pay an assessed tax after receiving notice and demand for payment, a lien automatically arises in favor of the United States upon "all property and rights to

property, whether real or personal," belonging to the taxpayer. 26 U.S.C. § 6321. In determining whether a tax lien attaches to a piece of property, courts "look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *United States v. Craft*, 535 U.S. 274, 278 (2002) (citation omitted).

The crux of the dispute between the United States and the Estate is whether Sid Crookston Construction holds a property right to the Naomi Circle property such that the liens for the company's unpaid taxes attach to the property. The United States argues that Sid Crookston Construction has rights to the Naomi Circle property under three separate theories under Utah law: resulting trust, constructive trust, and a nominee theory. The United States further contends that these property rights justify the tax liens against the property under federal law. The court examines each of the government's theories in turn.

## I.    RESULTING TRUST

The United States first argues that the undisputed facts prove that Sid Crookston Construction had a property interest in the Naomi Circle property through a resulting trust. "[A] purchase money resulting trust is an equitable remedy designed to implement what the law assumes to be the intentions of the putative trustor." *In re Hock's Est.*, 655 P.2d 1111, 1114 (Utah 1982). "Where a transfer of properties is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid . . . ." *Id.* at 1115 (quoting Restatement (Second) of Trusts § 440 (1959)). But a resulting trust does not arise "if the person by whom the purchase price is paid manifests an intention that no resulting trust should arise." Restatement (Second) of Trusts § 441. If a resulting trust contradicts a

deed, the party alleging the existence of a resulting trust has the burden of proving it by clear and convincing evidence. *Hock's Est.*, 655 P.2d at 1114.

The United States is not entitled to summary judgment on its resulting trust theory. The key component of a resulting trust is that the beneficial owner pays the purchase price of the property—either with cash or with a loan taken out in the beneficial owner's name. *See United States v. Tingey*, 716 F.3d 1295, 1303 (10th Cir. 2013) (affirming the district court's finding that a resulting trust existed under Utah law where the beneficial owner paid the $5,000 deposit, approximately $72,000 for the down payment, and was personally obligated on a promissory note for the balance of the purchase price of a ski cabin). But the evidence in this case shows that Sid Crookston paid the purchase price for the land with funds obtained from a loan in his own name. Julianne Crookston then paid for the land and the construction cost of the home with funds obtained through the 2008 construction loan and the 2012 loan. Although Sid Crookston Construction paid $5,773.21 toward Sid Crookston's purchase-money loan and $134,066.67 toward the loan in Julianne Crookston's name, these amounts are only a small fraction of the $845,000 loan that Julianne obtained in 2012, which represented the cost of the land and the construction of the home. These payments do not constitute clear and convincing evidence that Sid Crookston Construction paid the purchase price of the Naomi Circle property.

Moreover, "[i]t is the intention 'at the time of the transfer and not at some subsequent time which determines whether a resulting trust arises.'" *Id.* at 1302 (citation omitted). The payments made by Sid Crookston Construction were made after Sid Crookston purchased the land and after Julianne Crookston paid for the land and the construction of the home through loans in her name. Payments made after the purchase (for the most part, years after the fact) do not constitute clear

and convincing evidence that the parties intended that Sid Crookston Construction would be the beneficial owner of the property from the outset.

For these reasons, the court denies summary judgment on the United States' resulting trust theory of property rights under Utah law.

## II.   CONSTRUCTIVE TRUST

As noted above, the determination of whether a tax lien burdens a particular piece of property involves a two-step analysis. First, the court must determine what rights the taxpayer has in the property under state law. *United States v. Craft*, 535 U.S. 274, 278 (2002). Then the court looks to federal law to determine whether those rights qualify as property under the tax lien statute. *Id.*

### A.   Utah Law

The United States argues that Sid Crookston Construction holds property rights to the Naomi Circle property under a constructive trust theory. "A constructive trust is an equitable remedy to prevent unjust enrichment," *In re Hock's Est.*, 655 P.2d 1111, 1114 (Utah 1982), and is "usually imposed where injustice would result if a party were able to keep money or property that rightfully belonged to another," *Wilcox v. Anchor Wate, Co.*, 164 P.3d 353, 362 (Utah 2007). "Courts recognize a constructive trust as a matter of equity where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior." *Id.* To the extent that a constructive trust contradicts a deed, the party alleging such a trust must prove the claim by clear and convincing evidence. *Hock's Est.*, 655 P.2d at 1114.

The United Sates argues that a number of actions taken by Sid Crookston Construction justify a constructive trust for money and resources transferred to the Naomi Circle property. The court addresses each of the government's arguments in turn.

1)      Payments Toward the Purchase-Money Loan

The United States first argues that the court should impose a constructive trust for the $5,773.21 in payments that Sid Crookston Construction made toward Sid Crookston's purchase-money loan for the land. The court disagrees because these payments do not constitute the type of wrongful act that would justify a constructive trust. It appears that Sid Crookston abused the corporate form of Sid Crookston Construction by directing it to pay for interest and fees owed on a loan for a parcel of land that Sid Crookston owned in his individual capacity. But those payments were made in 2008, well before Sid Crookston Construction began to accrue the unpaid tax bills at issue in this case. Although a strong case can be made that Sid Crookston Construction acted wrongfully by paying for the personal expenses of Sid Crookston, there is no evidence that the company was syphoning away assets in order to avoid paying overdue taxes. Thus, the wrongful act is, at best, only tangentially linked to the purpose of the proposed constructive trust—to capture assets to pay for Sid Crookston Construction's federal tax bill.

The United States' argument for a constructive trust for these payments is not unfounded. Sid Crookston Construction acted wrongfully, and Juliane Crookston was indirectly enriched by receiving the property unburdened by the amount paid toward the purchase money loan. But because the wrongful act's ties to the purpose of the proposed constructive trust are tenuous, the United States has not satisfied the clear and convincing evidence standard required for the imposition of a constructive trust.

2)      Construction of the Home

Julianne Crookston paid Sid Crookston Construction for materials and for subcontractors used to construct the home through draws on the 2008 construction loan in her name. The United States argues, however, that the court should impose a constructive trust for the value of

9

uncompensated resources that Sid Crookston Construction contributed toward the construction of the home in the form of unpaid labor and the use of its equipment. The court denies summary judgment on this claim.

Sid Crookston testified that employees of Sid Crookston Construction contributed unpaid labor towards construction of the home as repayment of favors that Sid Crookston had done for them in the past to construct their own homes. Moreover, two of Sid Crookston Construction's employees were Sid Crookston's sons while a third was Julianne Crookston's son. Because this issue is before the court in a summary judgment posture, the court accepts as true that the labor contributed by Sid Crookston and by the employees of Sid Crookston Construction was performed in their personal capacities and not as agents of Sid Crookston Construction.

Sid Crookston also testified that he sometimes used Sid Crookston Construction's equipment, including a bulldozer and a track hoe, during the construction of the home. But because Sid Crookston Construction was the general contractor for the project, it is not surprising that its equipment was utilized. There is no evidence that contractors typically include separate charges for the use of equipment to complete a construction project. Moreover, the United States has not presented any evidence that the court could use to assign a monetary value for the use of equipment during construction.

Therefore, the court denies summary judgment on the United States' constructive trust theory for uncompensated labor and the use of Sid Crookston Construction equipment. The government's arguments rely heavily on drawing inferences in its favor based upon incomplete and disputed facts. Summary judgment on this record does not comport with the standard for Rule 56 motions.

3)      Payments Toward the 2012 Loan and Property Taxes

Between January 2014 and June 2016, Sid Crookston Construction made direct payments toward Julianne Crookston's 2012 mortgage loan for the Naomi Circle property totaling $134,066.67. Between 2013 and 2016, Sid Crookston Construction also paid $21,254.44 toward the property taxes for the property. The United States argues that the court should impose a constructive trust on the Naomi Circle property for these payments. The court agrees.

These loan and property tax payments constitute wrongful acts justifying a constructive trust. *Arlin Geophysical Co. v. United States*, No. 2:08-cv-00414-DN-EJF, 2018 WL 4621748 (D. Utah Sept. 26, 2018) is apt and persuasive authority on this point. In that case, a taxpayer failed to pay his income taxes for many years. *Id.* at *5. While owing a sizeable tax bill, the taxpayer "funneled his money into corporate entities . . . in [an] effort to hide his control over the money's use and to evade his tax obligations. These transfers were made without regard to corporate formalities." *Id.* at *8 (footnote omitted). Applying Utah law, the *Arlin Geophysical* court found that the transfers of funds to the corporate entities were wrongful acts because they constituted improper attempts to shield assets from collection for the unpaid tax obligations. *Id.* at *9. The court further found that one of the corporate entities was unjustly enriched by the transfer of funds and that properties owned by the corporate entity were traceable to the wrongful behavior because they were borne from the failure to adhere to corporate formalities and from tax evasion. *Id.*

Similarly, Sid Crookston Construction ignored corporate formalities by making direct payments toward a loan and property tax liabilities owed by Julianne Crookston. Moreover, Sid Crookston Construction made these payments after it had neglected to pay its taxes for years. In light of the substantial tax liability that burdened Sid Crookston Construction, the payments evince an intent to dodge the mounting tax bill by attempting to transfer assets beyond the reach of the

11

United States. Indeed, the company continued to make loan payments right up until it stopped operating in mid-2016. Accordingly, the court finds by clear and convincing evidence that Sid Crookston Construction acted wrongfully by making mortgage payments and tax payments for the Naomi Circle property in order to avoid paying its own taxes.

These wrongful acts unjustly enriched Julianne Crookston. Unjust enrichment consists of "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Jeffs v. Stubbs*, 970 P.2d 1234, 1248 (Utah 1998) (citation omitted). Julianne Crookston received a benefit from Sid Crookston Construction by accepting the payments. Moreover, the payments toward her mortgage and property taxes could not be made without her knowledge. The retention of the wrongful mortgage and property tax payments would also be inequitable. Julianne Crookston did not confer any benefit to Sid Crookston Construction in exchange for the payments. And the payments were made to shield the money from Sid Crookston Construction's creditors, including the United States. It would be inequitable to allow the scheme to succeed where Julianne Crookston did not exchange any value for the payments.

Finally, the Naomi Circle property can be traced to mortgage and property tax payments because the payments directly benefited Julianne Crookston's ownership of and title to the Naomi Circle property.

The Estate argues that the court should deem the mortgage and property tax payments to be constructive distributions to Sid Crookston, which he then used to pay for the expenses of the marital home. In other words, the Estate contends that even if Sid Crookston syphoned assets away from Sid Crookston Construction the wrong way—through direct payments for personal

12

expenses—the court should deem that he had done it the right way by taking distributions, reporting them to the IRS, and using the money to make the mortgage and tax payments.

The court disagrees. Courts have deemed payments made by a corporation to be taxable dividends if the corporation "confers an economic benefit on a stockholder without expectation of repayment." *Wortham Mach. Co. v. United States*, 521 F.2d 160, 164 (10th Cir. 1975); *accord Dolese v. United States*, 605 F.2d 1146, 1154 (10th Cir. 1979). The Tenth Circuit has applied this doctrine to prevent shareholders from evading taxes on dividends by characterizing benefits conferred on them as nontaxable loans or corporate expenses. Here, however, the Estate proposes to apply this doctrine to further Sid Crookston Construction's scheme to avoid paying its taxes by diverting the company's resources toward the Naomi Circle property and beyond the reach of the collection efforts of United States. Nothing in the law or equity requires the court to immunize Sid Crookston Construction from the consequences of its wrongful conduct by recharacterizing its payments as distributions after the fact.

The Estate also relies on *In re Taylor* to argue that a constructive trust would be improper. 133 F.3d 1336 (10th Cir. 1998). In that case, a husband transferred his interest in the marital home to his wife. *Id.* at 1339. But the husband's income continued to be the primary source for the mortgage payments for the home. *Id.* A few years later, a plaintiff obtained a judgment against the husband, and he declared bankruptcy. *Id.* The bankruptcy court imposed a constructive trust for half of the value of the home, ruling that the husband had retained an equitable interest in the property despite the transfer. *Id.* at 1340. The Tenth Circuit reversed, holding that the payment of property taxes, insurance, utilities, and other household expenses by one spouse for a home owned entirely by the other spouse does not give rise to a constructive trust in the marital home. *Id.* at 1342–43. *In re Taylor* is inapposite to the facts of this case because Sid Crookston Construction

13

was not Julianne Crookston's spouse. It was a limited liability company. Accordingly, the rationale of *In re Taylor*, which rested on the sharing of household expenses in a marriage, simply has no application here.

In short, the United States has proven by clear and convincing evidence that it is entitled to a constructive trust against the Naomi Circle property in the amount of $155,321.11 for mortgage payments and property tax payments that Sid Crookston Construction made between 2014 and 2016.

4)    Other Payments Toward Household Expenses

Sid Crookston Construction also made payments for the homeowner's insurance, gas, power, internet service, landscaping, extermination services, and plumbing services for the Naomi Circle property between 2014 and 2016. The United States argues that it is entitled to a constructive trust for the amount of these household expense payments.

The court denies summary judgment in favor of the United States because it has not shown that Sid Crookston Construction's wrongful behavior in paying for Sid and Julianne Crookston's household expense was sufficiently tied to the Naomi Circle property. Gas, electricity, and internet services are modern amenities that few homeowners would choose to do without. But these services are not directly linked to the value of the property or to Julianne Crookston's equity in the home. Payments for homeowner's insurance are a closer call. Many home loans require the owner to maintain insurance or face the risk of foreclosure. Thus, there may be an argument that wrongful payments toward a homeowner's policy can be traced to the property because the policy allows the homeowner to continue to own the property. But there is no evidence of that here. Additionally, payments for capital improvements or routine maintenance that augment or prevent the degradation of a property's value could be sufficiently linked to the property to permit a

14

constructive trust. The United States, however, merely provides evidence that Sid Crookston Construction made payments toward "landscaping" and "plumbing." These labels are not sufficient to support a finding that these payments affected the value of the Naomi Circle property.

Thus, the United States has not shown that it is entitled to summary judgment on its claim for a constructive trust for the above-listed payments.

5)    ACI Payments

Soon after Sid Crookston Construction stopped operations in mid-2016, ACI started operations. ACI was operated by two of Sid Crookston's sons and Julianne Crookston's son. In July 2016, ACI hired Julianne Crookston as a secretary. At that time, she had the highest base salary of all of ACI's employees. After ACI started operations, it began making payments towards the property taxes, homeowner's insurance, gas, power, internet service, water, sewer, and garbage services for the Naomi Circle property. Citing this court's judgment in *ACI Construction, LLC v. United States of America*, 1:19-cv-00054-JNP, the United States argues that ACI is responsible for the tax liabilities of Sid Crookston Construction because it is merely a continuation of that business. The government further contends that the court should impose a constructive trust for at least part of Julianne Crookston's salary because ACI artificially inflated it to facilitate loan payments for the Naomi Circle property. The government also argues that a constructive trust is appropriate for the property tax payments and other payments made by ACI for household expenses. The court denies summary judgment on the United States' ACI claims.

First, the United States may not rely on the court's finding in the *ACI Construction* case that ACI is liable for the unpaid taxes of Sid Crookston Construction. In order for the resolution of an issue in a separate litigation to bind the parties in this litigation, the court must determine that the four elements of collateral estoppel have been satisfied. Those elements are:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009). Because the Estate was not a party to or in privity with a party in the *ACI Construction* case, issues resolved in that case do not bind the Estate. Moreover, the United States has not attempted to show that the undisputed facts of this case show that ACI is merely a continuation of Sid Crookston Construction by another name. Because this issue has yet to be resolved in this case, summary judgment on whether payments made by ACI created a constructive trust for taxes owed by Sid Crookston Construction is not appropriate.

Second, the United States has not presented undisputed evidence that could only permit the conclusion that the salary that ACI paid to Julianne Crookston was merely a scheme to funnel money toward mortgage payments for the Naomi Circle property. Although the amount of Julianne Crookston's salary and the timing of her employment with ACI certainly could arouse suspicion, the United States has not presented any direct evidence of the alleged scheme. Moreover, the United States has not traced the money paid to Julianne Crookston to any mortgage payments. Nor has the government stated how much of Julianne Crookston's salary should be subject to a constructive trust. Because the United States' claim for a constructive trust relies heavily upon inferences and supposition drawn from disputed facts, it is not amenable to summary adjudication.

6)      The Naomi Circle Property as a Whole

The United States argues that the above-stated theories for a constructive trust, taken together, also justify a constructive trust for the entire value of the Naomi Circle property. The court disagrees. First, the United States has shown that it is entitled to summary judgment on only

one of its constructive trust theories, representing only a fraction of the total value of the property. Second, the government's claim to the entire value of the property ignores the contribution that Julianne Crookston made toward the property through loans that she took out in her name to pay for the land and the construction of the home thereon. *Cf. Tingey*, 716 F.3d at 1303 (holding that funds obtained from a loan, together with cash contributions, justified a resulting trust in favor of the borrower). The loan funds, secured by Julianne Crookston's promise to pay the loans back with interest, constitute substantial contributions that cannot be ignored in determining the amount of any constructive trust for the Naomi Circle property.

### B.    Federal Law

As discussed above, the United States has proven that Sid Crookston Construction's mortgage and property tax payments for the Naomi Circle property resulted in a constructive trust against the property in the amount of $155,321.11. Having determined Sid Crookston Construction's right to the property under Utah law, the court must next decide whether this property right gives rise to a tax lien under federal law.

Under 26 U.S.C. § 6321, a tax lien automatically arises upon "all property and rights to property, whether real or personal," belonging to the taxpayer. The statutory language of § 6321 "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Drye v. United States*, 528 U.S. 49, 56 (1999) (citation omitted). Moreover, a constructive trust under Utah law is an equitable remedy that is inherently broad in nature. *See Parks v. Zions First Nat. Bank*, 673 P.2d 590, 597 (Utah 1983) ("[t]he forms and varieties of these trusts . . . are practically without limit." (alterations in original) (citation omitted)). It is "usually imposed where injustice would result if a party were able to keep money or property that rightfully belonged to another." *Wilcox*, 164 P.3d at 362. Because a constructive trust permits the transfer of

17

property held in the name of one party to its rightful owner, it is precisely the type of property interest that gives rise to a tax lien under § 6321. *See G. M. Leasing Corp. v. United States*, 429 U.S. 338, 350–51 (1977) (holding that a tax lien attached to property held in the name of an alter ego of the taxpayer); *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007) (holding that "'property' and 'rights to property' [under § 6321] may include 'not only property and rights to property owned by the taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer.'" (second alteration in original) (citation omitted)); *United States v. Ambrose*, 782 F.2d 1044 (6th Cir. 1985) (per curium) (unpublished) (confirming a tax lien on real property under a constructive trust theory). Accordingly, the United States has a tax lien in the amount of $155,321.11 against the Naomi Circle property.

## III.   NOMINEE THEORY

Finally, the United States argues that Sid Crookston Construction holds property rights to the Naomi Circle property under what it labels as a nominee theory. The court denies summary judgment in favor of the United States because it has not shown that Utah recognizes a nominee theory of property rights that is distinct from a resulting trust or constructive trust theory.

The United States relies heavily on *Holman v. United States*, 505 F.3d 1060, 1065 (10th Cir. 2007) to support its nominee claim. In that case, the United States placed a tax lien on real property nominally owned by a delinquent taxpayer's wife and a third party as tenants in common. *Id.* at 1063. The federal district court ruled that the tax lien did not attach to the one-half undivided interest in the property held in the wife's name, reasoning that she could not be the taxpayer's nominee because the taxpayer did not convey legal title to the property to his wife. *Id.* at 1064. On appeal, the Tenth Circuit found that the district court erred in ruling that the beneficial owner must

directly transfer property to another in order to create a nominee relationship. *Id.* at 1064–66.

Citing federal law, that court held that

> an actual transfer of legal title is not essential to the imposition of a
> nominee lien. A delinquent taxpayer who has never held legal title
> to a piece of property but who transfers money to a third party and
> directs the third party to purchase property and place legal title in
> the third party's name may well enjoy the same benefits of
> ownership of the property as a taxpayer who has held legal title. In
> both instances, the third party may be the taxpayer's nominee.

*Id.* at 1065. In a footnote found in this section of the opinion, the Tenth Circuit quoted the following

language from a Sixth Circuit case:

> "Many courts use six factors in evaluating nominee questions: (1)
> whether inadequate or no consideration was paid by the nominee;
> (2) whether the property was placed in the nominee's name in
> anticipation of a lawsuit or other liability while the transferor
> remains in control of the property; (3) whether there is a close
> relationship between the nominee and the transferor; (4) whether
> they failed to record the conveyance; (5) whether the transferor
> retained possession; and (6) whether the transferor continues to
> enjoy the benefits of the transferred property."

*Id.* at 1065 n.1 (quoting *Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005)).

In a separate section of its opinion, the *Holman* court went on to hold that the district court

had failed to analyze whether the taxpayer had a property right under Utah law: "[T]he district

court did not resolve the question of whether [the taxpayer] had an interest in the Centerville

property under Utah law and, if so, whether the IRS's nominee lien could be enforced as a matter

of federal law." *Id.* at 1067. Accordingly, the Tenth Circuit remanded to case to the district court

with instructions to determine whether the taxpayer had an interest in the property under Utah law.

*Id.* In so doing, the *Holman* court cited three cases applying resulting trust and constructive trust

theories under Utah law. *Id.* at 1068 (citing *Parks v. Zions First Nat. Bank*, 673 P.2d 590, 598–600

(Utah 1983); *In re McGavin*, 189 F.3d 1215, 1217–19 (10th Cir. 1999); *In re Taylor*, 133 F.3d 1336, 1341 (10th Cir. 1998)).

Focusing on the footnote quoting the Sixth Circuit *Spotts* opinion, the United States argues that the *Holman* opinion "suggested that courts apply [the six *Spotts*] factors in a nominee analysis under Utah law." ECF No. 87 at 29. The court disagrees. The Tenth Circuit did not purport to declare Utah law when it quoted the Sixth Circuit *Spotts* factors. Indeed, the section of the opinion where the footnote is located is bereft of any discussion of or citation to Utah law. Instead, the *Holman* court found that the district court had failed to analyze the issue of property rights under Utah law and directed the lower court to do so while citing cases applying resulting trust and constructive trust theories. In short, *Holman* did not establish a separate nominee theory of property rights under Utah law.

The Utah cases cited by the United States also do not support its proposed nominee theory. The government cites *Pelton's Spudnuts v. Doane*, 234 P.2d 852, 855–56 (Utah 1951), which states in a single sentence "If a party continues to exercise the privileges of a franchise, whether in his own name or through a nominee, he is not in any position to deny the obligations which attach to such use." It also points to *Free v. Farnworth*, 144 P.2d 532, 535 (Utah 1943), which held that a property owner that neglects to pay property taxes cannot purchase the property at a tax sale through a nominee and take the property free of mortgages or other liens. Finally, the United States cites a criminal case, *State v. Strand*, 720 P.2d 425, 430 (Utah 1986), where the Utah Supreme Court found sufficient evidence to uphold a defendant's conviction for making a false material statement about having no assets to satisfy a judgment where the defendant had recently transferred the bulk of his wealth to nominees. In each of these cases, the Utah Supreme Court merely referenced in passing the concept of transferring property to a nominee. None of the cited caselaw

20

announced a test or factors to consider for determining whether a property is held by a nominee in name only. Nor do these cases establish a theory of nominee property ownership distinct from the resulting trust or constructive trust doctrines. Thus, the United States has failed to cite a single Utah case supporting its nominee theory.

In sum, Utah law analyzes what the United States labels as a nominee theory of property ownership under resulting trust and constructive trust principles. Utah law does not recognize a separate nominee theory. Nor have Utah courts adopted the nominee factors mentioned in the *Holman* footnote. Accordingly, the United States cannot establish a property right under its proposed nominee theory.[3]

## IV.   FORECLOSURE

The United States argues that it is entitled to summary judgment on its claim for foreclosure on its liens to satisfy Sid Crookston Construction's unpaid tax bill. But the government's request for an order of foreclosure is premature. Although the court grants summary judgment on a portion of the United States' claims against the Estate, it denies summary judgement on other claims, leaving them open for resolution at trial. These outstanding issues as to the full scope and validity of the tax liens precludes summary judgment on the government's foreclosure demand.

---

[3] The court acknowledges that its ruling on the United States' nominee theory in this case is inconsistent with a prior order in a related case: *RC Smithfield, LLC v. United States*, No. 1:21-cv-0090-JNP-DAO, 2024 WL 2744566, at *13–*14 (D. Utah Mar. 28, 2024). Upon further consideration, the court has determined that its analysis of the nominee theory in the *RC Smithfield* case was incorrect, even though the ultimate result of that case is sound because it was independently supported by resulting trust and constructive trust theories.

**CONCLUSION**

For the above-stated reasons, the court grants in part and denies in part the United States'

motion for summary judgment. The court grants summary judgment in favor of the United States

to the extent that it seeks confirmation of a tax lien in the amount of $155,321.11 against the Naomi

Circle property. The court denies summary judgment on the government's other claims.

DATED September 26, 2024.

BY THE COURT

Jill N. Parrish
United States District Court Judge

22